UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Jennifer Thompson, Corey Anderson, Olatokunbo Bajulaiye, Michael Bird, Matthew Boedecker, Nathan Boisclair, Jessica Bremer, Alan Buckel, Crystal Camp, Joshua Camp, Nicholas Carmisito, Shawn Carson, Christiana Childers, Guy Courts, Anne Crivea, Daniel Desprez, Krista Dutcher, Ron Easton, Jr., Tyler Elgin, Victoria Hamilton, Douglas Holmes, Henry Johnson, Corliss Kalchert, Brian Kenny, Jessica King, Brennan LaFleur, Scott LaFleur, Jennifer Leal, J.T. Gordon Littleton, Jeffrey Manns, Scott Marshall, Mark Nuzzolilo, Jesse, Nyboer, Kylie Nyboer, Brandon Okamoto, Bradley O'Neil, Andrew Popp, Danielle Ramiller, Daniel Rawdon, Dominic Rocco, Danielle Sanders, Jason Sanders, Frank Schumacher, Paul Schweizer, Christopher Secord, Gary Sereno, II, Christopher Smith, Patricia Smith, Shawn Swinehart, Robin Thomas, John Turner, Garrett Whipple, Dustin Winn and Rachel Zitta, individually, and on behalf of all other similarly situated individuals,

       Plaintiffs,

vs.

City of Flint, a municipal Michigan corporation; Gary Hagler, Flint Chief of Police, in his individual and official capacities; Genesee County; Robert J. Pickell, Genesee County Sheriff, in his individual and official capacities; Flint Police Officers Michael Beaver, Richard Besson, Colin Birnie, Mark Blough, Renee Burnett, Alpheno Donastorg, Al Fowlkes, Bobby Fowlkes, Joseph Hall, Mira Handley, Cynthia Herfert, Leteia Hughley, Joseph Lechota, Vennette Lott, Marcus Mahan, Patrick Majestic, William Meyer, Candace Miles, Arnold Patrick, Harold Payer, Philip Smith, Wayne Suttles, Sondra Taylor, Dominic Teft, Michael Vance, Rogelio Villarreal, Scott Watson and Terrell Weston, in their individual and official capacities; Genesee County Deputies Jeff Antcliff, Dean Curtis, Sandy Dunlap, David Dwyre, David MacDonald, Gerald Parks, Tom Pyles, Kevin Shanlian, Russ Sorenson, Chris Swanson, Mike Tocarchick, Jerry Willhelm and Mike Wolosuk, in their individual and official capacities; jointly and severally,

       Defendants.

Case No.:4:07-cv-11107

HON. PAUL V. GADOLA
Mag. Judge Steven R. Whalen

**SECOND AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF WITH RELIANCE ON JURY DEMAND**

Pitt McGehee Palmer Rivers & Golden, P.C.
Michael L. Pitt (P24428)
Peggy Goldberg Pitt (P31407)
Maureen M. Crane (P58904)
Cooperating Attorneys, ACLU Fund of Michigan
117 West Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800

Kenneth M. Mogill (P17865)
Mogill, Posner & Cohen
Cooperating Attorneys, ACLU Fund of Michigan
27 E. Flint Street, Fl. 2
Lake Orion, MI 48362
(248) 814-9470

Elizabeth L. Jacobs (P24245)
Cooperating Attorney, ACLU Fund of Michigan
615 Griswold Street, Suite 1125
Detroit, MI 48226
(313) 962-4090

Michael J. Steinberg (P43085)
Kary L. Moss (P43759)
American Civil Liberties Union
Fund of Michigan
Attorneys for Plaintiffs
60 West Hancock Street
Detroit, MI 48221
(313) 578-6814

Gregory T. Gibbs (P26440)
Jeanmarie Miller (P44446)
Law Office of Gregory T. Gibbs
Cooperating Attorneys, ACLU Fund of Michigan
717 S. Grand Traverse Street
Flint, MI 48502
(810) 239-9470

H. William Reising (P19343)
Plunkett & Cooney, P.C.
Attorneys for Defendants: Genesee County and
Genesee County Deputies
111 E. Court Street, Suite 1B
Flint, MI 48502
(810) 342-7001

Daniel Klemptner (P68691)
Assistant City Attorney
Trachelle C. Young (P63330)
Chief Legal Officer
Attorneys for City of Flint and Gary Hagler
1101 S. Saginaw Street, 3rd Floor
Flint, MI 48502
(810) 766-7146

Michael W. Edmunds (P55748)
William J. Brickley (P36716)
Garan Lucow Miller, P.C.
Attorneys for Defendant Flint police officers
8332 Office Park Drive
Grand Blanc, MI 48439
(810) 695-3700

G. Gus Morris (P32960)
Kupelian Ormond & Magy, P.C.
Attorney for Defendant Officer Michael Wolosuk
25800 Northwestern Highway, Suite 950
Southfield, MI 48075
(248) 357-0000

## SECOND AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF WITH RELIANCE ON JURY DEMAND

Plaintiffs, by and through their undersigned counsel, complain against Defendants as follows:

## I. NATURE OF ACTION

1.      This civil rights action arises from the unlawful warrantless arrest of Plaintiffs at an electronic music event held at a licensed Flint nightclub on March 20, 2005.  Plaintiffs were, without probable cause, handcuffed, patted down, strip-searched (and in some cases, body cavity searched), seized of their personal possessions, verbally abused, physically assaulted and ticketed for a misdemeanor, Frequenting a Disorderly House under Section 31-11(e) of a Flint City Ordinance.  On October 13, 2006, the Genesee County Circuit Court ruled there was no probable cause for the Plaintiffs' arrests, and on January 9, 2007, the charges were dismissed with prejudice.

2.      Plaintiffs bring this action to vindicate individual constitutional and statutory rights which were blatantly violated by Defendants, acting under color of state law in concert with one another, in reckless and deliberate disregard of fundamental rights and freedoms guaranteed all law-abiding citizens of the United States.

3.      Plaintiffs seek monetary, compensatory and punitive damages, injunctive and declaratory relief, pursuant to 42 U.S.C. § 1983, for deprivation of their Fourth Amendment rights

to be free from unreasonable search and seizure and their First Amendment rights to free speech, association and assembly. They also seek relief for false arrest and imprisonment, assault and battery, intentional infliction of emotional distress, and for violation of Michigan statutes, M.C.L. § 764.25a and § 764.25b, prohibiting warrantless strip searches and body cavity searches conducted in the manner alleged below.

## II.  JURISDICTION AND VENUE

4.      This Court has original subject matter jurisdiction under 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1343 (original jurisdiction over civil rights claims); and 28 U.S.C. §§ 2201 and 2202 (declaratory relief).

5.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 because Plaintiffs' state law claims form part of the same case or controversy as Plaintiffs' § 1983 claims over which this Court has original subject matter jurisdiction.

6.      Venue is proper under 28 U.S.C. § 1391(b) because the events or omissions giving rise to the claims occurred in this District.

## III.  DESCRIPTION OF THE PARTIES

7.      Plaintiffs are citizens and domiciliaries of the United States who attended an electronic music event on March 20, 2005, at Club What's Next, a licensed nightclub in Flint, Michigan.

8.      Defendant City of Flint is a municipal corporation in Genesee County, Michigan, subject to the laws and constitutions of the State of Michigan and the United States.

9.      Defendant Genesee County is governed by the Genesee County Board of Commissioners, and is subject to the laws and constitutions of the State of Michigan and the United States.

10.     Defendant Gary Hagler is, and was at all relevant times, the duly appointed Chief of the Flint Police Department and is sued in his official and individual capacities.

11.     Defendant Robert Pickell is, and was at all relevant times, the duly elected Sheriff of Genesee County, and is sued in his official and individual capacities.

12.     Defendants Michael Beaver, Richard Besson, Colin Birnie, Mark Blough, Renee Burnett, Alpheno Donastorg, Al Fowlkes, Bobby Fowlkes, Joseph Hall, Mira Handley, Cynthia Herfert, Leteia Hughley, Joseph Lechota, Vennette Lott, Marcus Mahan, Patrick Majestic, William Meyer, Candace Miles, Arnold Patrick, Harold Payer, Philip Smith, Wayne Suttles, Sondra Taylor, Dominic Teft, Michael Vance, Rogelio Villarreal, Scott Watson and Terrell Weston, are or were employed as law enforcement officers by the City of Flint Police Department at all relevant times, and were individually and/or jointly responsible for the violations of law alleged herein.  These Defendants are sued in their official and individual capacities.

13.     Defendants Jeff Antcliff, Dean Curtis, Sandy Dunlap, David Dwyre, David MacDonald, Gerald Parks, Tom Pyles, Kevin Shanlian, Russ Sorenson, Chris Swanson, Mike Tocarchick, and Jerry Willhelm, are or were employed as law enforcement officers by the Genesee County Sheriff's Department at all relevant times, and were individually and/or jointly responsible for the violations of law alleged herein.  These Defendants are sued in their official and individual capacities.

14.     Defendant Mike Wolosuk was and is employed as a patrol officer with the Mount Morris Township Police Department.

15.    For purposes of this Complaint, "Defendant officer" refers to one or more ("Defendant officers") individuals named above in paragraphs 12, 13 and 14.

## IV.  **GENERAL ALLEGATIONS**

16.    Club What's Next ("the Club") is a licensed nightclub located at 2511 W. Pasadena Avenue in Flint, Michigan.  In March 2005, the Club had been in business for over ten (10) years and was open to members of the public.

17.     In March 2005, the Club was available for rental by private companies sponsoring music events.  These companies promoted the events and hired deejays to provide the featured entertainment.

18.    On March 19, 2005, Jell-Oh Productions had rented Club What's Next to hold an electronic music event open to the public.

19.    Electronic music encompasses a broad set of percussive music genres originating from the 1970's disco music and contemporary pop music.  The music is created and performed by a deejay through an artistic manipulation of various electronic instruments such as synthesizers, drum machines, and sequencers.  Electronic music events feature performance artists, dancing, and use of visual stimuli such as light shows.

20.    On March 19, 2005, Plaintiffs went to Club What's Next to listen to, perform, dance to and/or watch deejays perform electronic music and to associate with people interested in electronic music.

21.    Sometime in January of 2005, according to Flint Police Department ("FPD") records, Defendant Sergeant William Meyer of the FPD Special Operations Bureau learned of the music

event from reading an internet message board he happened upon while investigating so-called "rave parties."

22.    Defendant Meyer informed Defendant Lieutenant Phillip Smith in January of 2005 that an alleged "rave party" was going to be held at Club What's Next on March 19, 2005. It was decided that Meyer would send undercover officers into the Club that night to attempt purchases of "Rave party type of drugs."

23.    During the first week of March 2005, according to FPD records, Defendant Meyer and Defendant Captain Chris Swanson of the Genesee County Sheriff's Department ("GCSD") agreed that the GCSD would assist the FPD in its activities in relation to the alleged "rave party" at the Club.

24.    On the night of the event, Defendant Meyer held a briefing with Defendant officers from the FPD and GCSD. During the briefing, according to FPD records, "[o]fficers were advised that if the undercover agents purchase drugs and drugs were being sold and used openly, *all subjects in the bar* would be placed under arrest for Frequenting a Drug House, *when the officers entered."* (emphasis added).

25.    Shortly after midnight on March 20, 2005, according to FPD records, three civilian agents and two undercover FPD officers entered the Club to attempt to purchase illegal drugs.

26.    The undercover officers and/or agents approached some of the Plaintiffs attempting to make drug buys, but the Plaintiffs turned them away. These unsuccessful attempts put Defendants on notice that there were persons in the Club who were not in possession of, or involved in selling, illegal drugs.

27.    At the time, there were about 120 attendees in the Club.

28.    Four attendees, none of whom is a Plaintiff in this action, allegedly sold drugs to undercover agents and officers.

29.    The undercover agents or officers notified Defendant Meyer of the alleged drug buys at about 1:40 a.m., at which time, Meyer advised all Defendant officers waiting outside to enter and arrest <u>everyone</u> in the Club.

30.    Plaintiffs, at the time, were listening to the music, performing, dancing,  enjoying the entertainment and/or engaging in other innocent lawful and constitutionally-protected activity, when Defendant officers stormed into the Club, yelling profanities, and announcing that everyone was under arrest, and shoving, pushing, grabbing, and ordering everyone to stand face first against the walls  and "shut the fuck up."

31.    Plaintiffs were arrested based on their mere presence in the Club.

32.    At the time of each individual Plaintiff's arrest, Defendants did not know the following about each individual Plaintiff:

      a.    When the Plaintiff originally entered the Club;

      b.    How long the Plaintiff had been in the Club;

      c.    Where the Plaintiff had been in the Club before police arrived;

      d.    Individuals with whom the Plaintiff associated while inside the Club;

      e.    Whether the Plaintiff had ever been to the Club before;

      f.    Whether the Plaintiff was aware of any drug activity;

      g.    Whether the Plaintiff could recognize the smell of marijuana;

      h.    Whether the Plaintiff could identify a substance as Ecstasy; or

      i.    Whether the Plaintiff could recognize drug paraphernalia.

33.     Defendant officers nevertheless seized the Plaintiffs, bound their hands behind their backs with handcuffs (or "zipties"), patted them down, searched wallets and cigarette packs retrieved from pants pockets and/or purses, and confiscated their personal identifications.

34.     While Plaintiffs stood facing the wall handcuffed, not knowing what was happening or why, Defendant officers began calling out their names one-by-one.

35.     As their names were called out, Plaintiffs were removed from their wall position and ordered to stand in one of several lines for reasons unknown to them at the time.

36.     When some Plaintiffs respectfully asked what was happening, Defendant officers yelled at them to "shut the fuck up."

37.     During the arrests, Defendant officers individually and collectively took steps to conceal their identities from the Plaintiffs by refusing to give their names on request and/or covering their badges.  Further, Defendant officers failed to prepare the disclosure reports required under Michigan's strip search and body cavity search statutes, M.C.L. §762.25a(4) and §762.25b(6), respectively.

38.     Upon information and belief, Plaintiffs identified to be deejays or event organizers were ordered to stand in the so-called "felony" line while the rest were sent to other lines.

39.     Defendant officers then began removing Plaintiffs from the line and walking them to the restrooms.  Male Plaintiffs were taken by male Defendant officers to the men's restroom.  Females were taken by female officers to the women's restroom.

40.     Plaintiffs were then subjected to degrading strip searches.

41.     Most of the strip searches took place in the restrooms.

42.     In many cases, the strip searches were performed in the presence of non-assisting police officers and other persons being (or waiting to be) strip-searched.

43.     In some cases, the strip searches were performed in plain view of onlookers who could see inside the restroom through an open door.

44.     During the strip searches, Defendant officers required Plaintiffs to remove their pants and in most cases, their underwear, exposing their bare genitalia and buttocks.

45.     Many Plaintiffs were forced to walk around naked in a circle, bend over, spread their buttocks cheeks, and cough while Defendant officers shone a flashlight on and/or visually examined their rectal cavity for contraband.

46.     Most of the Plaintiffs were still handcuffed during their strip searches and were unable to undress themselves.  In those cases, the Defendant officers undressed the Plaintiffs, strip-searched them, and put the Plaintiffs' clothes back on, while keeping the Plaintiffs restrained in handcuffs behind their back.

47.     Defendant officers subjected certain Plaintiffs, including Jennifer Thompson, Christopher Secord, Brennan LaFleur and Danielle Ramiller, to extremely degrading body cavity searches for contraband.

48.     Defendant officers used excessive force against Plaintiffs by pushing, shoving, grabbing, and/or using other unnecessary physical force and intimidation even though Plaintiffs did not provoke Defendants nor resist arrest.

49.     Plaintiffs were subjected to a barrage of profanity and name-calling by Defendant officers, inappropriate sexual advances, ethnic remarks, insults and slurs against individuals perceived to be gay or lesbian, and other forms of verbal abuse and intimidation.

50.     Defendant officers processed Plaintiffs *en masse* through fingerprinting and booking, and issued misdemeanor citations for Frequenting a Disorderly House under Section 31-11(e) of the Flint City Ordinance.

51.     Many Plaintiffs were issued citations before they were strip-searched.

52.     Plaintiffs who had driven their own vehicles to the Club were escorted to their cars by Defendant officers and compelled to surrender their car keys as a condition of being released from police custody.  Defendants searched Plaintiffs' vehicles without their voluntary consent, ransacking the inside compartments and searching inside the trunks.

53.     Police remained on the premises from approximately 1:40 a.m. until about 7:00 a.m., by which time most of the Plaintiffs had finally been released.

### V. ALLEGATIONS OF INDIVIDUAL PLAINTIFFS

#### PLAINTIFF CORY L. ANDERSON

54.     Plaintiff Cory Anderson resides in Washtenaw County, Michigan.

55.     On the night of March 19, 2005, Anderson went to Club What's Next to listen to electronic music with friends.

56.     Anderson was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

57.     Anderson was strip-searched in the men's restroom in the presence of another attendee and non-assisting officer.  Anderson was required to remove his underwear exposing his genitalia and buttocks.  After ordering Anderson to turn around, the Defendant officer separated Anderson's legs, ordered him to bend over and spread his buttocks cheeks, and performed a humiliating visual examination of his rectal cavity.

### PLAINTIFF OLATOKUNBO O. BAJULAIYE

58.     Plaintiff Olatokunbo Bajulaiye resides in Genesee County, Michigan.

59.     On the night of March 19, 2005, Bajulaiye went to Club What's Next to listen to electronic music with friends.

60.     Bajulaiye was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

61.     Bajulaiye was strip-searched in the presence of other male and female attendees and non-assisting officers in the hallway entrance to the men's restroom.  Bajulaiye was required to remove his underwear, exposing his genitalia and buttocks for a humiliating visual examination by a Defendant officer.

62.     Bajulaiye witnessed and heard Defendant officers ridiculing certain male attendees for appearing to be gay and making derogatory remarks that these men could cavity search themselves and "stick their fingers in each other's asses."

### PLAINTIFF MICHAEL W. BIRD

63.     Plaintiff Michael Bird resides in Maricopa County, Arizona.

64.     On the evening of March 19, 2005, Bird went to Club What's Next to listen to electronic music with friends.

65.     Bird was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

66.     Without provocation, a Defendant officer hooked Bird's right arm around his right arm and pushed his left hand in the middle of Bird's back shoving Bird against the wall while yelling close to his face, "Shut the fuck up" and "Don't look me in the face."

67.    Bird was strip-searched in the men's restroom in the presence of other male attendees and non-assisting officers. Bird was required to remove his pants and underwear, exposing his genitalia and buttocks. Bird was ordered to lift his testicles, then squat and cough for a humiliating visual examination of his rectal cavity.

68.    Bird witnessed and heard a Defendant officer, believed to be Officer Villarreal, and another Defendant officer, make offensive comments of a sexual nature to a female attendee regarding her looks, buttocks, and dress. One officer commented that he bet this female attendee had a good looking mother.

### PLAINTIFF MATTHEW BOEDECKER

69.    Plaintiff Matthew Boedecker resides in Genesee County, Michigan.

70.    On the night of March 19, 2005, Boedecker went to Club What's Next to listen to electronic music with friends.

71.    Boedecker was arrested, handcuffed, patted down, and searched by Defendant officers for no reason other than he happened to be present in the Club.

72.    Boedecker was strip searched in the men's restroom in the presence of other male attendees and non-assisting officers. Boedecker was required to remove his pants and underwear, exposing his genitalia and buttocks. Boedecker was ordered to lift his testicles, then squat and cough for a humiliating visual examination of his rectal cavity.

73.    Defendant officers searched Boedecker's vehicle without his voluntary consent.

### PLAINTIFF NATHAN D. BOISCLAIR

74.    Plaintiff Nathan Boisclair resides in Genesee County, Michigan.

75.    Boisclair worked as a deejay at Club What's Next on March 19, 2005.

76.    Boisclair was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

77.    Boisclair was strip-searched twice in the men's restroom. Both searches were done in the presence of other male attendees and non-assisting officers. Both times, Boisclair was required to remove his underwear, exposing his genitalia and buttocks for a humiliating visual examination by the Defendant officer. Boisclair was also told to empty his pockets, at which time the Defendant officer searched his wallet and cigarette pack. The Defendant officer also searched Boisclair's shoes including the shoe lining.

78.    Defendant officers searched Boisclair's vehicle without his voluntary consent.

### PLAINTIFF JESSICA A. BREMER

79.    Plaintiff Jessica Bremer resides in Genesee County, Michigan.

80.    On the evening of March 19, 2005, Bremer went to Club What's Next to listen to electronic music with friends.

81.    Bremer was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than she happened to be present in the Club.

82.    Bremer was strip-searched in the women's restroom by a female officer. Bremer was required to remove her pants, exposing her underwear, and ordered to put her hand on the counter, squat down, and "push."

### PLAINTIFF ALAN L. BUCKEL

83.    Plaintiff Alan Buckel resides in Genesee County, Michigan.

84.    Buckel went to the March 19, 2005 event at Club What's Next to listen to electronic music with friends.

85.    Buckel was arrested, handcuffed, patted down four times, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

86.    Buckel was strip-searched in the presence of other male attendees and non-assisting officers in the men's restroom.  While Buckel was handcuffed, the Defendant officer pulled up his shirt and pulled Buckel's pants down, exposing his underwear, and visually examined Buckel's genitalia and buttocks by pulling his underwear away from his skin and ordering Buckel to squat down.

87.    Buckel witnessed and heard Defendant officers gloating about having successfully restrained all the attendees, and making threats such as,  "We're gonna shove our fingers up your asses and strip search you ... can't wait," or similar words.

### Plaintiff Crystal Camp

88.    Plaintiff Crystal Camp resides in Genesee County, Michigan.

89.    On the night of March 19, 2005, Camp went to Club What's Next to listen to electronic music with friends.

90.    Camp was arrested, handcuffed, patted down, and searched by Defendant officers for no reason other than she happened to be present in the Club.

### Plaintiff Joshua D. Camp

91.    Plaintiff Joshua Camp resides in Colbert County, Alabama.

92.    On the night of March 19, 2005, Camp went to Club What's Next to listen to electronic music with friends.

93.    Camp was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

94.     Camp was strip-searched in the men's restroom in the presence of other male attendees and non-assisting officers.  A Defendant officer lifted up Camp's shirt, pulled down his pants and underwear, exposing his genitalia and buttocks, and groped Camp's testicles causing extreme humiliation.

95.     Camp observed and heard officers use extreme force, slamming an attendee against the wall for respectfully asking the officers why they were arresting everyone.

96.     Camp witnessed and heard Defendant officers making inappropriate remarks of a sexual nature toward female attendees, commenting on one's "big boobs."

### PLAINTIFF NICHOLAS L. CARMISINO

97.     Plaintiff Nicholas Carmisino resides in Genesee County, Michigan.

98.     Carmisino went to the March 19, 2005 event at Club What's Next to listen to electronic music with friends.

99.     Carmisino was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

100.     Carmisino was strip-searched in the men's restroom in the presence of other male attendees and non-assisting officers.  The Defendant officer felt Carmisino's legs and upper body, lifted Carmisino's shirt above his chest and required Carmisino to remove his pants, exposing his underwear, for visual examination.

101.     Carmisino was forced to turn over his car keys to a Defendant officer before he could leave the premises.  Defendant officers searched Carmisino's vehicle, including the trunk, without his voluntary consent.

**PLAINTIFF SHAWN J. CARSON**

102.    Plaintiff Shawn Carson resides in Genesee County, Michigan.

103.    Carson went to the March 19, 2005 event at Club What's Next to listen to electronic music with friends.

104.    Carson was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

105.    Carson was strip-searched in the men's restroom in the presence of other male attendees and non-assisting officers.  Carson was required to remove his pants and underwear, exposing his genitalia and buttocks.   A Defendant officer then ordered Carson to lift up his testicles, turn around, squat, and spread his buttocks cheeks apart for a humiliating visual examination of his rectal cavity.

106.    Carson witnessed and heard Defendant officers verbally abusing female attendees. In one instance, Carson observed a male officer point his flashlight on a female attendee's breasts and then lower the flashlight down her body and say,  "You're coming with me, bitch," and threatening to take her to jail where she was "going to get raped."

107.    Defendant officers searched Carson's vehicle without his voluntary consent.

**PLAINTIFF CHRISTIANA A. CHILDERS**

108.    Plaintiff Christiana Childers resides in Macomb County, Michigan.

109.    On the evening of March 19, 2005, Childers went to Club What's Next to listen to electronic music and celebrate a friend's birthday.

110.    Childers was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than she happened to be present in the Club.

111.    Childers asked Defendant officers to cuff her hands in front instead of behind her back because she had a permanent injury on her wrist from a car accident.  Defendant officers refused and placed the handcuffs behind her back.

112.    Childers was strip-searched in the women's restroom by a female officer.  Childers was required to drop her pants, exposing her underwear for visual examination.  The Defendant officer ordered Childers to place her hands above her head, while the officer reached inside Childers' shirt, pulled her brassiere, shook it, and gave Childers another pat down.  When Childers needed to use the restroom, she was not allowed to close the stall door and was denied the use of toilet paper.

113.    Childers heard Defendant officers calling certain attendees "faggots."

114.    The booking officer told Childers she was going to jail for a very long time, that she would not see the light of day, and said, "You can kiss your ass goodbye."

### PLAINTIFF GUY D. COURTS

115.    Plaintiff Guy Courts resides in Genesee County, Michigan.

116.    Courts worked as a deejay at a wedding on the night of March 19, 2005.  On his way home from the wedding, Courts and friends drove by Club What's Next and decided to stop in to listen to the electronic music.

117.    Courts was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

118.    Courts was strip-searched twice in the men's restroom in the presence of other male attendees and non-assisting officers.

119.    In the first strip search, the Defendant officer removed Courts' shoes, socks, belt, pants and underwear, exposing his genitalia and buttocks, and ordered Courts to bend over for a humiliating visual examination of his rectal cavity.

120.    Courts was again strip-searched about an hour later.  A Defendant officer patted him down, removed his shoes and pants, exposing his underwear, and felt around the elastic band of Courts' underwear.

### Plaintiff Anne M. Crivea

121.    Plaintiff Anne Crivea resides in Genesee County, Michigan.

122.    On the night of March 19, 2005, Crivea went to Club What's Next to listen to electronic music with friends.

123.    Crivea was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than she happened to be present in the Club.

124.    Crivea was strip-searched twice.

125.    The first strip search was conducted by two female officers in the room behind the deejay's booth.  Defendant officers searched Crivea's pockets, pulled down her pants, exposing her underwear, lifted up her shirt, felt inside her brassiere, searched her socks and inside her shoes.

126.    The second strip search took place in the women's restroom in the presence of two female officers.  The Defendant officer searched Crivea's pockets and patted her legs again.  When the officer started to search under Crivea's shirt, the second officer asked the other officer if she had looked "in here" and exposed Crivea's breasts.

127.    Crivea was subjected to verbal abuse and intimidation by Defendant officers, including inappropriate remarks such as she was only in the Club "for the booty."

128.    Defendant officers searched Crivea's vehicle without her voluntary consent.

### PLAINTIFF DANIEL J. DESPREZ

129.    Plaintiff Daniel Desprez resides in Macomb County, Michigan.

130.    On the evening of March 19, 2005, Desprez went to Club What's Next to socialize with friends.

131.    Desprez was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

132.    Desprez's back became sore after standing handcuffed for some time.  When he asked a Defendant officer if he could lean against the mirrored wall, the Defendant officer said, "How about you look at the ground," or similar words.  The officer used his feet to cause Desprez to lose his balance, and bend his knees and then used the handcuff to lower Desprez to the ground face to the floor.  Desprez was forced to lie on the floor with his face against the cold, dirty tile for an hour or longer.

133.    Desprez was strip-searched in the men's restroom in the presence of two non-assisting officers.  Desprez was required to remove his pants and underwear, exposing his genitalia and buttocks.  The Defendant officer then ordered Desprez to bend over and spread his legs, at which point, the officer shone a flashlight on his rectal cavity.

134.    During the strip search, three officers in the restroom were laughing at Desprez, causing him further humiliation and embarrassment.

### Plaintiff Andrea M. Doyle

135.    Plaintiff Andrea Doyle resides in Macomb County, Michigan.

136.    On March 19, 2005, Doyle went to Club What's Next to listen to electronic music with friends and celebrate a friend's birthday.

137.    Doyle was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than she happened to be present in the Club.

138.    A Defendant officer told Doyle to "shut the fuck up" when she asked him what was going on as he was restraining her in handcuffs.

139.    Doyle was strip-searched by a female Defendant officer in a back room where the deejays set up.  The room had a large window.  The Defendant officer lifted up Doyle's shirt, exposing and pulling her brassiere away from her body, exposing her breasts.  The defendant officer then lifted up Doyle's skirt exposing her underwear.

140.    Doyle witnessed and heard Defendant officers, without provocation, yelling at attendees to "shut the fuck up" and telling one female attendee who was crying inconsolably in fear, "You brought this on yourself ... you're a stupid bitch."

141.    Defendant officers searched Doyle's vehicle without her voluntary consent.

### Plaintiff Krista E. Dutcher

142.    Plaintiff Krista Dutcher resides in Genesee County, Michigan.

143.    On the evening of March 19, 2005, Dutcher went to Club What 's Next to play pool with friends.

144.    Dutcher was arrested, handcuffed, patted down, and searched by Defendant officers for no reason other than she happened to be present in the Club.

145.    Defendant officers searched Dutcher's purse, dumping the contents on the floor and sorting through the items.

146.    Dutcher was subjected to verbal abuse and intimidation by the arresting officers, who made inappropriate comments of a sexual nature.  When Dutcher was being booked, the officer preparing her paperwork stopped the officer next to him and said, "Stop whatever you're doing .. Isn't this the hottest bitch in this joint ... it's a shame."

### Plaintiff Ronald J. Easton, Jr.

147.    Plaintiff Ronald Easton resides in Oakland County, Michigan.

148.    On the evening of March 19, 2005, Easton went to Club What's Next to listen to electronic music with friends.

149.    Easton was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

150.    Easton was strip-searched in the men's restroom in the presence of another male attendee and non-assisting officer.  A Defendant officer ordered Easton to remove all of his clothing, exposing his genitalia and buttocks, and then instructed Easton to lift his testicles, turn around, spread his legs, and bend over for a humiliating visual examination of his rectal cavity.

151.    During the arrests, Easton heard a female screaming with fright, and a Defendant officer yelling, "Make her eat the floor ... crack her skull."

152.    Defendant officers searched Easton's vehicle without his voluntary consent.

### Plaintiff Tyler J. Elgin

153.    Plaintiff Tyler Elgin resides in Wayne County, Michigan.

154.    On the evening of March 19, 2005, Elgin went to Club What's Next to listen to electronic music with friends.

155.    Elgin was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

156.    Elgin was strip-searched in the men's restroom with the door open, in the presence of other male attendees being searched and non-assisting officers. Males and females walking down the hallway could see Elgin being searched. A Defendant officer pulled Elgin's pants and underwear down, exposing his genitalia and buttocks, ordered him to bend over, and then performed a humiliating visual examination of his rectal cavity.

157.    Defendant officers searched Elgin's vehicle without his voluntary consent.

158.    Before the arrests at Club What's Next on March 20, 2005, Elgin traveled to Flint, Michigan to attend electronic music events, and to assemble and associate with others who shared his mutual interest in this form of musical expression.

159.    After he was arrested at Club What's Next on March 20, 2005, Elgin stopped attending gatherings in Flint where electronic music was featured because of his concern that he will be arrested for merely being present at such an event or assembly.

160.    But for the events of March 20, 2005, Elgin would have continued to travel to Flint, Michigan to attend electronic music events, and to assemble and associate with others who share his mutual interest in this form of musical expression.

161.    Elgin would resume participating in electronic music events in Flint, Michigan if the Court granted Plaintiffs' request for injunctive relief.

162.    There exists no adequate remedy at law to address the ongoing chill of Elgin's constitutional rights.

### PLAINTIFF VICTORIA HAMILTON

163.    Plaintiff Victoria Hamilton resides in Ingham County, Michigan.

164.    On the night of March 19, 2005, Victoria Hamilton went to Club What's Next to listen to electronic music with friends.

165.    Hamilton was arrested, handcuffed, patted down, and searched by Defendant officers for no reason other than she happened to be present in the Club.

166.    Defendant officers searched Hamilton's vehicle without her voluntary consent.

### PLAINTIFF DOUGLAS W. HOLMES, II

167.    Plaintiff Douglas Holmes resides in Columbia County, Florida.

168.    On the evening of March 19, 2005, Holmes went to Club What's Next to listen to electronic music and attend a birthday party.

169.    Holmes was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

170.    Holmes was strip-searched twice in the men's restroom in the presence of male officers and other attendees who were also being searched.

171.    For the first strip search, Holmes was required to loosen his shirt, empty his pockets and turn them inside out, then remove his shoes and socks, remove his pants halfway, exposing his underwear, and turn around and bend over.

172.    For the second strip search, Holmes was required to remove his pants, lift up his testicles, and turn around and bend over for a humiliating visual examination of his rectal cavity.

### PLAINTIFF HENRY J. JOHNSON

173.    Plaintiff Henry Johnson resides in Shiawassee County, Michigan.

174.    On the evening of March 19, 2005, Johnson went to Club What's Next to listen to electronic music with friends.

175.    Johnson was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

176.    Johnson was strip-searched in the men's restroom in the presence of other male attendees and non-assisting officers. Johnson was required to face the wall in the restroom while the Defendant officer unfastened his belt from behind, patted down Johnson's shirt, and dropped his pants and underwear, exposing his genitalia and buttocks. The Defendant officer then had Johnson bend forward and performed a humiliating visual examination of his rectal cavity.

### PLAINTIFF CORLISS E. KALCHERT

177.    Plaintiff Corliss Kalchert resides in Summit County, Ohio.

178.    On the evening of March 19, 2005, Kalchert went to Club What's Next to listen to electronic music and celebrate a friend's birthday.

179.    Kalchert was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than she happened to be present in the Club.

180.    Kalchert was strip-searched in the women's restroom by a female officer. While Kalchert was handcuffed, a Defendant officer lifted up Kalchert's shirt, searched inside her brassiere, and said, "Wow, you have some really nice breasts, are those real?" When Kalchert answered yes, the officer said, "I know women who would kill for breasts like yours." At that point, the officer pulled Kalchert's shirt back down and searched her pants pockets. Then the officer

pulled Kalchert's jeans and underwear down to the floor, exposing her genitalia and buttocks, and made Kalchert bend over and cough.  The Defendant officer re-fastened Kalchert's jeans, took off her shoes and socks, and searched inside her shoes.

181.    When Kalchert asked the Defendant officer conducting the strip search why she was being arrested, the officer said she was in the "wrong place at the wrong time."

182.    Before the arrests at Club What's Next on March 20, 2005, Kalchert traveled from Ohio to Flint, Michigan to attend electronic music events, and to assemble and associate with others who shared her mutual interest in this form of musical expression.

183.    After she was arrested at Club What's Next on March 20, 2005, Kalchert stopped attending gatherings in Flint where electronic music was featured because she feared, and still fears, that she will be arrested for merely being present at such an event or assembly.

184.    But for the events of March 20, 2005, Kalchert would have continued to travel to Flint, Michigan to attend electronic music events, and to assemble and associate with others who share her mutual interest in this form of musical expression.

185.    Kalchert would resume participating in electronic music events in Flint, Michigan if the Court granted Plaintiffs' request for injunctive relief.

186.    There exists no adequate remedy at law to address the ongoing chill of Kalchert's constitutional rights.

### PLAINTIFF BRIAN F. KENNY

187.    Plaintiff Brian Kenny resides in Oakland County, Michigan.

188.    On the evening of March 19, 2005, Kenny went to Club What's Next to listen to electronic music with friends.

189.    Kenny was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

190.    Kenny was strip-searched in the men's restroom in the presence of other non-assisting officers. The restroom door remained open during the strip search which allowed passers by to view the search. The Defendant officer required Kenny to remove his shirt, and his pants and underwear, exposing his genitalia and buttocks, and ordered Kenny to bend over and cough for a humiliating visual examination of his rectal cavity.

### Plaintiff Jessica L. King

191.    Plaintiff Jessica King resides in Pinellas County, Florida.

192.    On the evening of March 19, 2005, King went to Club What's Next with her friend, Paul Schweizer, who was working as a deejay at the Club that night.

193.    King was arrested, handcuffed, patted down, and searched by Defendant officers for no reason other than she happened to be present in the Club.

194.    During the arrests, King observed and heard a Defendant officer laughing and joking that it was "time" to get the gloves out to do cavity searches on everyone. The officers acted as if they enjoyed threatening Plaintiffs and causing fearful anticipation of being stripped naked and body cavity searched.

### Plaintiff Nicole M. Kruszka

195.    Plaintiff Nicole Kruszka resides in Macomb County, Michigan.

196.    Kruszka went to Club What's Next on March 19, 2005, to celebrate a friend's birthday.

197.    Kruszka was arrested, handcuffed, patted down, and searched by Defendant officers for no reason other than she happened to be present in the Club.

198.    Kruszka heard Defendant officers calling female attendees "whores" and "sluts" during the arrests.

### PLAINTIFF BRENNAN LAFLEUR

199.    Plaintiff Brennan LaFleur resides in Wayne County, Michigan.

200.    On the night of March 19, 2005, Brennan LaFleur went to Club What's Next to listen to electronic music with friends.

201.    Brennan LaFleur was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

202.    Brennan LaFleur was strip-searched in the men's restroom in the presence of other male attendees and non-assisting officers.  LaFleur was required to remove his pants and underwear, exposing his genitalia and buttocks.  LaFleur was ordered to lift his testicles, squat, and separate his buttock cheeks while the officer proceeded to insert his fingers (wearing a glove) into LaFleur's rectal cavity to perform a humiliating search for contraband.

### PLAINTIFF SCOTT LAFLEUR

203.    Plaintiff Scott LaFleur resides in Shiawassee County, Michigan.

204.    On the evening of March 19, 2005, LaFleur went to Club What's Next to socialize with friends.

205.    LaFleur was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

206.    LaFleur was strip-searched in the men's restroom in the presence of three other attendees and two Defendant officers.  The four attendees, including LaFleur, were ordered to stand and put their hands against the wall while the officers strip-searched each man one-by-one. LaFleur was required to remove his pants and underwear, exposing his genitalia and buttocks, and to lift his testicles for the officer's viewing.  The Defendant officer then ordered LaFleur to turn around, bend over, spread his legs, and cough.  LaFleur was also ordered to place his hands on and separate his buttock cheeks while the officer shone a flashlight on his rectal cavity.

### Plaintiff Jennifer R. Leal

207.    Plaintiff Jennifer Leal resides in Crawford County, Michigan.

208.    Leal went to the March 19, 2005 event at Club What's Next to listen to electronic music with friends.

209.    Leal was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than she happened to be present in the Club.

210.    Leal was strip-searched by a female officer in a back room behind the deejay's booth.  The room was lined with mirrored walls.  The Defendant officer made Leal pull down her pants, exposing her underwear, and lift up her shirt while the officer ran her fingers along the underwire of Leal's brassiere.

211.    Defendant officers searched Leal's vehicle without her voluntary consent.  Leal's car was parked across the street from the club at a McDonald's restaurant.  After booking Leal, two Defendant officers told her that she needed an escort to her car.  The officers accompanied Leal and her friend to her car and searched under the front seats, glove box, and console.

### Plaintiff JT Gordon Littleton

212.    Plaintiff JT Gordon Littleton resides in Ingham County, Michigan.

213.    On the evening of March 19, 2005, Littleton went to Club What's Next to listen to electronic music with friends.

214.    Littleton was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

215.    Littleton was strip-searched by a Defendant officer in the men's restroom in the presence of another male attendee and non-assisting officer.  The Defendant officer ordered Littleton to remove his pants and underwear, exposing his genitalia and buttocks, and to bend over, spread his legs, and cough.  In this position, the Defendant officer, standing only about two feet from Littleton, performed a humiliating visual examination of his rectal cavity.

216.    Littleton was harassed by a Defendant officer when he tried to retrieve his coat on the way out of the club.  The officer asked Littleton if it was his coat, and when Littleton answered affirmatively, the officer pointed to a bag of white powder and said, "We found this in your coat." Littleton told the officer that the bag was not in his coat and did not belong to him.  Another Defendant officer then re-handcuffed Littleton and said, "You're under arrest."  Littleton told the officers he was being falsely accused and that his rights were being violated.  At that point, another Defendant officer said to the arresting officer, "He's not buying it ... let him go."  The arresting officer removed the handcuffs and told Littleton to get his coat.

217.    Another Defendant officer threatened Littleton when he asked for the officer's badge number and name at the time of the arrests.  The officer responded: "I'm not giving you

shit" and "If you bother me any more, I'm going to have these guys beat the fuck out of you in the street."

218.    Littleton witnessed and heard Defendant officers verbally harassing a female attendee who was crying during a pat down by a Defendant officer. The young woman kept saying she was innocent and that she was just there to see her friends. Defendant officer said, "You need to shut up right now." When the young woman repeated, "I'm innocent," the Defendant officer grabbed her by the neck, threw her to the floor, and put his knee on her neck. Another Defendant officer stepped over the young woman, picked a bag off the floor appearing to contain drugs, hit her with it in the shoulder, and said, "These are yours now ... you're going to prison."

219.    Littleton also heard Defendant officers calling female attendees "whores" and berating people with comments such as, "you're a piece of shit" and "fuck you."

### PLAINTIFF JEFFREY B. MANNS

220.    Plaintiff Jeffrey Manns resides in Wayne County, Michigan.

221.    Manns worked as a deejay at the March 19, 2005 event at Club What's Next.

222.    Manns was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

223.    In arresting Manns, a Defendant officer gripped the back of Manns' neck and pushed him against the wall face first.

224.    Manns was strip-searched in the men's restroom in the presence of other male attendees and non-assisting officers. Manns was required to remove his pants, exposing his underwear.

225.    A Defendant officer called Manns a "pretty boy" while another Defendant officer called Manns' friend, Plaintiff Christopher Secord, a "little faggot."

### PLAINTIFF SCOTT MARSHALL

226.    Plaintiff Scott Marshall resides in Midland County, Michigan.

227.    Marshall went to the March 19, 2005 event at Club What's Next to listen to electronic music with friends.

228.    Marshall was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

229.    Marshall was strip-searched in the men's restroom in the presence of other male attendees and non-assisting officers.  Marshall was ordered to stand in a corner of the restroom where a pile of vomit laid on the floor, and was forced to strip naked.  Marshall was required to remove all his clothing, exposing his genitalia and buttocks for a humiliating visual examination of his rectal cavity, and then ordered by the Defendant officer to lift his testicles and walk in a circle.

230.     Defendant officers searched Marshall's vehicle without his voluntary consent.

### PLAINTIFF MARK V. NUZZOLILO II

231.    Plaintiff Mark Nuzzolilo resides in San Mateo County, California.

232.    Nuzzolilo went to the March 19, 2005 event at Club What's Next to listen to electronic music with friends.

233.    Nuzzolilo was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

234.    In arresting Nuzzolilo, Defendant officer grabbed Nuzzolilo by his arm or shoulder and pushed him toward the wall face first.

235.    Nuzzolilo was strip-searched in the men's restroom in the presence of other males and non-assisting officers.   A Defendant officer removed Nuzzolilo's shoes, looked inside his mouth, and searched all of his pockets.  The officer also removed Nuzzolilo's sweatshirt and looked inside his shirt.  The officer removed Nuzzolilo's pants, exposing his underwear, and then searched inside his underwear with a flashlight.

### PLAINTIFF JESSE NYBOER

236.    Plaintiff Jesse Nyboer resides in Kent County, Michigan.

237.    On the night of March 19, 2005, Jesse Nyboer went to Club What's Next to listen to electronic music with friends.

238.    Jesse Nyboer was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

### PLAINTIFF KYLIE NYBOER

239.    Plaintiff Kylie Nyboer resides in Kent County, Michigan.

240.    On the night of March 19, 2005, Kylie Nyboer went to Club What's Next to listen to electronic music with friends.

241.    Kylie Nyboer was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than she happened to be present in the Club.

242.    Defendant officers searched Nyboer's vehicle without her voluntary consent.

### PLAINTIFF BRANDON J. OKAMOTO

243.    Plaintiff Brandon Okamoto resides in Kent County, Michigan.

244.    Okamoto worked as a deejay at Club What's Next on March 19, 2005.

245.     Okamoto left the Club *before* Defendant officers entered the Club. He was driving home to give his wife the car for her night shift at work when he was stopped by Defendant officers. Three police cars surrounded Okamoto during the stop. Defendant officers told Okamoto that he was under arrest because they believed he had been at Club What's Next that night.

246.     Okamoto was arrested, handcuffed, patted down, and strip-searched by Defendant officers based only on their belief that he had attended the event at Club What's Next that night.

247.     Defendant officers cuffed Okamoto's hands behind his back, pinned him against the car, patted him down, and removed his wallet from a pocket.

248.     Defendant officers subjected Okamoto to offensive ethnic remarks about Native Americans and made fun of Okamoto's name.

249.     Defendant officers strip-searched Okamoto along the side of the road visible to passing motorists. The search was conducted in the presence of five or six non-assisting officers, one of whom was female. A Defendant officer removed Okamoto's pants, exposing his underwear, and looked inside his underwear at his genitalia.

250.     Okamoto remained involuntarily confined in the police vehicle while Defendant officers searched his car without his voluntary consent.

251.     After strip searching Okamoto and searching his vehicle, Defendant officers drove him back to Club What's Next. Okamoto sat in the police car for about 15 minutes in the parking lot of the Club. He was then taken out of the police car by a female officer and handed to another officer who brought him back into the Club where Okamoto observed people lining up against the wall and being handcuffed.

252.    Okamoto was strip-searched a second time in the men's restroom in the Club. Okamoto was required to remove his pants and underwear, exposing his genitalia and buttocks, and ordered to bend over for a humiliating visual examination of his rectal cavity.

253.    Okamoto heard a Defendant officer comment about a female attendee's dress after which the officer turned to another officer and said he "want[ed] some of that."

### PLAINTIFF BRADLEY O'NEIL

254.    Plaintiff Bradley O'Neil resides in Roscommon County, Michigan.

255.    On the night of March 19, 2005, O'Neil went to Club What's Next to listen to electronic music with friends.

256.    O'Neil was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

257.    O'Neil was required to remove his pants and underwear, exposing his genitalia and buttocks, and ordered to bend over for a humiliating visual examination of his rectal cavity.

### PLAINTIFF ANDREW POPP

258.    Plaintiff, Andrew Popp, presently resides in California.

259.    On the evening of March 19, 2005, Popp went to Club What's Next to listen to electronic music with friends.

260.    Popp was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

261.    Popp was strip-searched by a Defendant officer in the men's restroom in the presence of other male attendees and non-assisting officers.  The Defendant officer ordered Popp to lift his shirt, remove his pants and underwear, exposing his genitalia and buttocks.  Popp was

then ordered to lift his testicles, bend over, and lean forward on the wall for a humiliating visual examination of his rectal cavity by the Defendant officer.

262.    Defendant officers engaged in name calling and verbal abuse toward Popp, including calling him a "pig fucker" and "chicken fucker."

### PLAINTIFF DANIELLE RAMILLER

263.    Plaintiff Danielle Ramiller resides in Genesee County, Michigan.

264.    On the night of March 19, 2005, Danielle Ramiller went to Club What's Next to listen to electronic music with friends.

265.    Danielle Ramiller was arrested, handcuffed, patted down, strip-searched and body cavity searched by Defendant officers for no reason other than she happened to be present in the Club.

266.    Ramiller was subjected to a degrading body cavity search in the hallway next to the men's restroom by a female Defendant officer.   The Defendant officer ordered Ramiller to bend over, with her genitalia and buttocks exposed, and proceeded to insert her fingers (wearing a glove) into Ramiller's vaginal and rectal cavities to perform a humiliating search for contraband.

### PLAINTIFF DANIEL RAWDON

267.    Plaintiff Daniel Rawdon resides in Flagler County, Florida.

268.    At the time of his arrest at Club What's Next, Rawdon resided in Ohio.

269.    Rawdon traveled to Flint, Michigan on March 19, 2005 to work as a deejay at the electronic music event being held at Club What's Next.

270.    Rawdon was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

271.    During the pat down, a Defendant officer removed an Altoid mint candy from Rawdon's pocket and told him that he was going to jail for possession of Ecstasy.

272.    Rawdon assured the officer it was only a mint but the officer refused to accept that explanation and accused Rawdon of being an organizer of the event.

273.    Rawdon was strip-searched three times before being transported to jail.

274.    The first strip search was conducted in the men's restroom in view of other male attendees and non-assisting officers.  The door remained open during the search.  Rawdon saw female attendees walking past and looking in the restroom.  Rawdon was ordered to remove his pants and underwear, exposing his genitalia and buttocks.  He was then instructed to lift his testicles, turn around, and bend down with his head between his legs while the Defendant officer shone a flashlight on his rectal cavity.

275.    Rawdon was returned to the main area and waited in handcuffs for hours with the other attendees.  When he later asked to use the bathroom, a Defendant officer grabbed Rawdon by his handcuffs and pulled him backwards to the men's restroom where he was strip-searched a second time.

276.    The second strip search was conducted in front of other male attendees and non-assisting officers in the men's restroom.  Again, the restroom door was left open and Rawdon saw female attendees walk by and look in as he was being searched.  Defendant officers required Rawdon to remove his shirt, pants and underwear, exposing his genitalia and buttocks.  The officers ordered Rawdon to lift his testicles, then turn around and bend down for another visual examination of his rectal cavity using the flashlight.  Defendant officers watched Rawdon use the toilet in a stall with the door open.

277.    The third strip search was conducted in the men's restroom in the presence of other attendees and non-assisting officers.  Defendant officers required Rawdon to remove his pants, exposing his underwear, and performed a similar visual examination of his body as the two previous searches.

278.    Rawdon was escorted out of the Club by Defendant officers, in view of television cameras, and placed in a police van with other attendees and transported to the Genesee County Jail.

279.    Rawdon was confined to a cell in the Genesee County Jail for two nights.

280.    Rawdon was finally released from jail on the third night.  He was forced to leave the premises at night without his coat in cold snowy weather.  Rawdon had only a cell phone (with a dead battery) and a check that police gave him in exchange for the cash they confiscated from him at the Club.  Rawdon was unable to call anyone to pick him up and was unable to cash the check since the banks were closed.

281.    Several weeks later, Rawdon was informed by the police that his Altoid candy was tested and the laboratory found it consisted of 88% sugar and 12% mint.

282.    Rawdon subsequently cancelled four months of booked engagements as a deejay at electronic music events as a result of this ordeal.

283.    Rawdon involuntarily stopped working as a deejay and participating in all electronic music events because he feared being arrested in the future based on mere presence at this type of music event.

284.    Since his arrest, Rawdon has not traveled and will not travel to the state of Michigan because of his fear and apprehension of being arrested, strip-searched, and jailed by police officers for participating in lawful activity.

### PLAINTIFF DOMINIC ROCCO

285.    Plaintiff Dominic Rocco currently attends college in Montreux, Switzerland.

286.    On the night of March 19, 2005, Rocco went to Club What's Next to listen to electronic music with friends.

287.    Rocco was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

### PLAINTIFF DANIELLE SANDERS

288.    Plaintiff Danielle Sanders resides in Genesee County, Michigan.

289.    On the night of March 19, 2005, Danielle Sanders went to Club What's Next to listen to electronic music with friends.

290.    Danielle Sanders was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than she happened to be present in the Club.

### PLAINTIFF JASON D. SANDERS

291.    Plaintiff Jason Sanders resides in Genesee County, Michigan.

292.    Sanders went to the March 19, 2005 event at Club What's Next to listen to electronic music with friends.

293.    Sanders was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

294.    Sanders was strip-searched in the men's restroom in the presence of other male attendees and non-assisting officers.  A Defendant officer removed Sanders' shirt, pants and underwear, exposing his genitalia and buttocks.  The officer then ordered Sanders, who was still handcuffed, to bend over the sink and cough three times while the officer performed a humiliating visual examination of his rectal cavity and said, "If I find coke or anything else come out of your ass, you're in big trouble."

295.    Sanders observed and heard Defendant officers harassing Plaintiff Dan Desprez while forcing him to lie face down on the floor.  When Desprez asked to use the restroom, Sanders heard the Defendant officer say: "You gotta piss?  Piss on this ... don't get up .. I dare your ass to get up."

### PLAINTIFF FRANK SCHUMACHER

296.    Plaintiff Frank Schumacher resides in Cuyahoga County, Ohio.

297.    Schumacher traveled to Flint, Michigan on March 19, 2005 to work as a deejay at the electronic music event being held at Club What's Next.

298.    Schumacher was arrested, handcuffed, patted down, and searched by Defendant officers for no reason other than he happened to be present in the Club.

### PLAINTIFF PAUL D. SCHWEIZER

299.    Plaintiff Paul Schweizer resides in Pinellas County, Florida.

300.    Schweizer worked as a deejay at Club What's Next on March 19, 2005.

301.    Schweizer was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

302.    Schweizer was strip-searched in the men's restroom by a male Defendant officer. The Defendant officer told Schweizer not to make any "gay comments" and then ordered him to remove his pants and underwear, exposing his genitalia and buttocks. The Defendant officer then instructed Schweizer to lift his testicles and bend over for a humiliating visual examination of his rectal cavity.

303.    Defendant officers searched Schweizer's vehicle without his voluntary consent.

### PLAINTIFF CHRISTOPHER J. SECORD

304.    Plaintiff Christopher Secord resides in Wayne County, Michigan.

305.    On the evening of March 19, 2005, Secord went to Club What's Next to listen to electronic music with friends.

306.    Secord was arrested, handcuffed, patted down, strip-searched and body cavity searched by Defendant officers for no reason other than he happened to be present in the Club.

307.    Secord was strip-searched in the men's restroom in the presence of another male attendee. The Defendant officer felt around Secord's underwear line and then forced Secord to remove his pants and underwear, exposing his genitalia and buttocks.

308.    Following the strip search, Secord was subjected to a degrading body cavity search. The Defendant officer told Secord the body cavity search was "procedure" and then proceeded to use his fingers to feel around Secord's rectal cavity. The search was so humiliating that Secord cried during the "procedure," and was still crying when Defendant officers callously placed him in handcuffs again and escorted him into the main area with other attendees under arrest.

309.    Defendant officers subjected Secord to verbal abuse and intimidation. One called him "faggot" and said, "with a pretty mouth like that" he (the officer) could "make a lot of money"

if he took Secord to a street corner. Secord was also called "a blond haired little fairy mother fucker." Officers made offensive remarks to Secord like, "You faggot, go suck a dick," and "Turn around you little pussy, you think this is a game you little fucker?"

310.    Secord heard Defendant officers using vulgar language toward other attendees and name-calling including "little fucking bitches," "you fucking pieces of shit," and "whores."

311.    Secord also witnessed and heard a Defendant officer say, "This girl looks like Britney Spears, we should take her home with us."

#### Plaintiff Gary W. Sereno II

312.    Plaintiff Gary Sereno resides in Oakland County, Michigan.

313.    Sereno went to the March 19, 2005 event at Club What's Next to socialize with friends and listen to the music.

314.    Sereno was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

315.    Sereno was strip-searched in the men's restroom in the presence of another male attendee and non-assisting Defendant officer. Sereno was required to remove his pants and underwear, exposing his genitalia and buttocks, and ordered to turn around, bend over, and spread his legs so the Defendant officer could perform a humiliating visual examination of his rectal cavity.

316.    Sereno was called a "fag" by a Defendant officer. Sereno also heard a Defendant officer say to another officer, "Bring that fag here," referring to Sereno.

317.    Sereno witnessed and heard Defendant officers calling female attendees derogatory names such as "bitches" and "whores."

### PLAINTIFF CHRISTOPHER R. SMITH

318.    Plaintiff Christopher Smith resides in Shiawassee County, Michigan.

319.    On the night of March 19, 2005, Smith went to Club What 's Next to listen to electronic music with friends.

320.    Smith was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

321.    A Defendant officer grabbed Smith and forced him up against the wall face first with his forearm placed behind his back by the officer.

322.    Smith was strip-searched in the men's restroom in the presence of other male attendees and non-assisting officers.  Smith was required to remove his pants and underwear, exposing his genitalia and buttocks, and ordered to lift up his testicles, walk in a circle, and squat for a humiliating visual examination of his rectal cavity.  Smith was then ordered to bend over and spread his legs again with his buttocks facing the Defendant officer, at which point the officer shone a flashlight in his rectal area.

323.    Standing naked in the men's restroom with other males being searched, Smith witnessed a Defendant officer order one of the men to "shove your thumb up your behind."

### PLAINTIFF PATRICIA S. SMITH

324.    Plaintiff Patricia Smith resides in Medina County, Ohio.

325.    On the night of March 19, 2005, Smith went to Club What's Next to listen to electronic music with friends.

326.    Smith was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than she happened to be present in the Club.

327.    While handcuffed, Smith saw Plaintiff Shawn Swinehart fall and hit his face on the

bar and bounce backwards.  Smith tried to go over to him to see if he was okay, at which point a

Defendant officer grabbed Smith by her hands or wrists from behind, and forcibly bent her body

over the bar while yelling, "I told you not to fucking move, that's what I mean."

328.    Smith was strip-searched in the women's restroom in the presence of other female

attendees and non-assisting officers. The Defendant officer felt Smith's hairline and behind her

ears, and looked inside her mouth.  Then the officer removed her shoes, shook them, and  took

off  Smith's  socks  and  pulled  her  toes  apart.    The  Defendant  officer  removed  Smith's  shirt,

unfastened her brassiere and felt underneath her brassiere.  The Defendant officer then removed

Smith's pants and underwear, exposing her genitalia and buttocks, and made Smith bend over the

back of a chair.  The officer spread Smith's buttocks apart and performed a humiliating visual

examination of her rectal cavity.

329.    When Smith asked to use the bathroom, the Defendant officer would not remove

Smith's handcuffs, but instead walked Smith to the stall, pulled down her pants and underwear,

and watched her use the toilet.

330.    While writing her ticket, a Defendant officer commented to Smith, "You're the

cutest chick in the whole joint.  What are you doing here?"

### Plaintiff Shawn A. Swinehart

331.    Plaintiff Shawn Swinehart resides in Medina County, Ohio.

332.    On the evening of March 19, 2005, Swinehart went to Club What's Next to listen

to electronic music with friends.

333.    Swinehart was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

334.    After Swinehart was handcuffed, and feeling anxious and faint, he fell and hit his chin against the bar and then fell backwards and hit his head.  The Defendant officers started laughing at Swinehart and offered him no medical attention even though his chin was cut.

335.    When Swinehart's friend, Plaintiff Patricia Smith, tried to assist him after the fall, the Defendant officers pushed her against the bar while she was handcuffed and yelled at her to get back to her position.

336.    Swinehart was strip-searched in the men's restroom in the presence of another non-assisting male officer who was strip searching another attendee.  While Swinehart was handcuffed, a Defendant officer removed Swinehart's shoes, pants and underwear, exposing his genitalia and buttocks for visual examination.

337.    Defendant officers searched Swinehart's vehicle without his voluntary consent.

### PLAINTIFF ROBIN THOMAS

338.    Plaintiff Robin Thomas resides in Genesee County, Michigan.

339.    On the night of March 19, 2005, Robin Thomas went to Club What's Next to listen to electronic music with friends.

340.    Robin Thomas was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than she happened to be present in the Club.

341.    Defendant officers searched Thomas' vehicle without her voluntary consent.

### PLAINTIFF JENNIFER M. THOMPSON

342.    Plaintiff Jennifer Thompson resides in Wayne County, Michigan.

343.    On the evening of March 19, 2005, Thompson went to Club What's Next to listen to electronic music with friends.

344.    Thompson was arrested, handcuffed, patted down, strip-searched, and body cavity searched by Defendant officers for no reason other than she happened to be present in the Club.

345.    Thompson was strip-searched in the women's restroom by a female Defendant officer.  First, the officer asked Thompson to open her mouth and she looked inside.  While Thompson remained handcuffed, the officer looked down her tank top shirt, and pulled Thompson's brassiere away from her body.  The officer then reached under the bottom of Thompson's skirt, and pulled her underwear down, exposing her genitalia and buttocks.

346.    The Defendant officer ordered Thompson to bend over the counter, with her genitalia and buttocks exposed, and proceeded to insert her fingers (wearing a glove) in Thompson's vaginal and rectal cavities to perform a humiliating search for contraband.

347.    Thompson was crying throughout the degrading body cavity search but the Defendant officer callously refused to stop the search.

348.    During the ordeal, Thompson heard Defendant officers berating and verbally abusing attendees with name-calling such as "homos," "fags" and "bitches."

### PLAINTIFF JOHN TURNER

349.    Plaintiff John Turner resides in Genesee County, Michigan.

350.    On the night of March 19, 2005, Turner went to Club What's Next to listen to electronic music with friends.

351.    Turner was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

## PLAINTIFF GARRETT S. WHIPPLE

352.    Plaintiff Garrett Whipple resides in Genesee County, Michigan.

353.    Whipple worked as a deejay at Club What's Next on March 19, 2005.

354.    Whipple was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than he happened to be present in the Club.

355.    Whipple was strip-searched in the men's restroom in the presence of non-assisting male officers.  While Whipple was handcuffed, a Defendant officer removed his clothes, exposing his genitalia and buttocks, and ordered Whipple to bend over for a humiliating visual examination of his rectal cavity.

356.    Whipple observed and heard Defendant officers calling one of the females a "whore," calling a male attendee "faggot," and harassing a male attendee who was forced to lie face down on the floor and denied use of the bathroom after repeated requests.

357.    Defendant officers searched Whipple's vehicle without his voluntary consent.

## PLAINTIFF DUSTIN WINN

358.    Plaintiff Dustin Winn resides in Midland County, Michigan.

359.    Winn traveled to Flint, Michigan on March 19, 2005 to work as a deejay at the electronic music event being held at Club What's Next.

360.    Winn was strip-searched in the men's restroom by a male Defendant officer. Winn was required to remove his pants and underwear, exposing his genitalia and buttocks.  Winn was ordered to lift his testicles for a humiliating visual examination of his rectal cavity.

**PLAINTIFF RACHEL ZITTA**

361.     Plaintiff Rachel Zitta resides in Midland County, Michigan.

362.     On the night of March 19, 2005, Rachel Zitta went to Club What's Next to listen to electronic music with friends.

363.     Zitta was arrested, handcuffed, patted down, and strip-searched by Defendant officers for no reason other than she happened to be present in the Club.

364.     Defendant officers searched Zitta's vehicle without her voluntary consent.

**VI. DISMISSAL OF CHARGES FOR LACK OF PROBABLE CAUSE**

365.     Ninety-four (94) individuals, including  the named Plaintiffs, were arrested and charged with a misdemeanor, Frequenting a Disorderly House under Section 31-11(e) of the Flint City Ordinance.

366.     Section 31-11(e) of the Flint City Ordinance on Frequenting a Disorderly House states, in relevant part:

> No person shall knowingly attend or frequent a disorderly house, room or place as herein defined.  ... (e) One in which controlled substances are delivered, used, sold or maintained.  Controlled Substances, for the purposes of this section, shall have the same meaning as, and shall include the same substances as, the State controlled substances statute, being MCLA §333.7171 et seq...

367.     On October 13, 2006, the Genesee County Circuit Court Judge Joseph A. Farah held that there was no probable cause for the arrest of any of the ninety-four attendees, including Plaintiffs.  *City of Flint v. Andrea Doyle*, Genesee Circuit Court Case No. 05-82575-AR.

368.     In finding no probable cause, the Court opined:

> Any finding to the contrary is undermined by the stipulated (or otherwise) evidence that police could offer no evidence particular to any single defendant as to their arrival or departure time, their precise location in the

club, their awareness of any particular transaction, or their knowledge of the transaction's significance.  To allow to stand the arrests of these 94 Defendants would be to allow lumping together people who had been at the Club for five minutes or five hours, people who never stopped dancing with those who sat next to a drug deal, people who sat at a table facing the wall with those in the middle of mischief, and charge those dissimilarly present individuals with equal awareness and knowledge of wrongdoing." *Opinion and Order on Remand, p. 5.*

369.    Defendant City of Flint did not appeal this ruling.

370.    On January 9, 2007, all criminal charges against Plaintiffs were dismissed with prejudice by Judge Ramona M. Roberts of the 68th District Court on the Genesee County Circuit Court's remand order.

371.    At the time of these arrests, it was clearly established under the Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, that the search or  seizure of one suspect cannot be bootstrapped into probable cause for a broad-based search or seizure of any other person, and that police officers must have *particularized* probable cause with respect to each person searched and/or seized.  *Ybarra v. Illinois*, 444 U.S. 85 (1979).

372.    In light of these clearly established rights, no reasonable official in the Defendants' circumstances could have believed that his or her actions were reasonable and constitutionally permissible with respect to the searches and seizures of  the Plaintiffs.

<u>**COUNT I**</u>
<u>**VIOLATION OF 42 U.S.C. § 1983**</u>
<u>**UNREASONABLE SEARCH AND SEIZURE**</u>
<u>**UNDER THE FOURTH AND FOURTEENTH AMENDMENTS**</u>
<u>**TO THE U.S. CONSTITUTION**</u>
<u>(AS TO ALL DEFENDANTS)</u>

373.    All prior paragraphs are incorporated by reference as if stated in full herein.

374.    Defendant officers, acting under color of state law and in concert with one another, violated Plaintiffs' constitutional right to be free from unreasonable search and seizure under the Fourth and Fourteenth Amendments to the U.S. Constitution.

375.    Defendant officers deprived Plaintiffs of their rights under the Fourth and Fourteenth Amendments to the U.S. Constitution by the following acts:

A)    Detaining Plaintiffs without reasonable suspicion that any individual Plaintiff had engaged in criminal activity;

B)    Arresting Plaintiffs without probable cause that any violation or crime had been committed or was likely to be committed;

C)    Patting down Plaintiffs without a reasonable belief that any individual Plaintiff was armed and presently dangerous;

D)    Strip searching Plaintiffs in the absence of a lawful arrest and without any particularized probable cause that a crime had occurred;

E)    Performing body cavity searches in the absence of a lawful arrest and without any particularized probable cause that a crime had occurred;

F)    Using excessive, unreasonable force in making their unlawful arrests when Plaintiffs never resisted Defendants and did not provide Defendants any reason to use such force;

G)    Searching and seizing Plaintiffs' personal property, including but not limited to, articles of clothing, coats, accessories, wallets, purses, money, and other possessions without probable cause, a search warrant or voluntary consent;

H)    Searching Plaintiffs' vehicles without probable cause, a search warrant or voluntary consent; and

I)    Using insulting and degrading language and otherwise searching, detaining, arresting and treating Plaintiffs in an unreasonable manner.

376.    The action of the Defendant officers directly and proximately caused the injuries and deprivations suffered by the Plaintiffs.

377.    Defendant officers acted knowingly and intentionally without good faith and in reckless disregard and deliberate indifference to Plaintiffs' constitutional rights.

378.    At all times relevant to this action, Plaintiffs' Fourth Amendment rights to be free from unreasonable searches and seizures were clearly established, and the Defendant officers acted objectively unreasonable under the circumstances.

379.    Defendant Gary Hagler, in his official capacity as Chief of Police of the City of Flint, had final control over day-to-day police matters, including the decision to authorize the actions of the Defendant officers alleged herein.  Hagler's policies, practices and customs amounted to a deliberate indifference of Plaintiffs' Fourth Amendment rights and were a moving force behind their constitutional injuries.

380.    Defendant Robert Pickell, in his official capacity as Sheriff of Genesee County, had final control over day-to-day police matters, including the decision to authorize the actions of the Defendant officers alleged herein. Pickell's policies, practices and customs amounted to a deliberate indifference of Plaintiffs' Fourth Amendment rights and were a moving force behind their constitutional injuries.

381.    Defendant City of Flint violated Plaintiffs' rights to be free from unreasonable search and seizure through its policies, practices and customs, including but not limited to the Flint Police Department's Strip Search Policy, which amounted to a deliberate indifference of the Plaintiffs' rights under the Fourth and Fourteenth Amendments, and were a moving force behind Plaintiffs' constitutional deprivations.

382.    Defendant City of Flint violated Plaintiffs' rights to be free from unreasonable search and seizure through its policy, practice and/or custom of failing to train and supervise its officers in the constitutionally permissible scope of searches and seizures, which amounted to a deliberate indifference of the Plaintiffs' rights under the Fourth and Fourteenth Amendments, and were a moving force behind Plaintiffs' constitutional deprivations.

383.    Defendant Genesee County violated Plaintiffs' rights to be free from unreasonable search and seizure through its policies, practices and customs that amounted to a deliberate indifference of the Plaintiffs' rights under the Fourth and Fourteenth Amendments, and were a moving force behind Plaintiffs' constitutional deprivations.

384.    Defendant Genesee County violated Plaintiffs' rights to be free from unreasonable search and seizure through its policy, practice and/or custom of failing to train and supervise its officers in the constitutionally permissible scope of searches and seizures, which amounted to a deliberate indifference of the Plaintiffs' rights under the Fourth and Fourteenth Amendments, and were a moving force behind Plaintiffs' constitutional deprivations.

385.    As a direct and proximate result of Defendants' policies, practices, customs, and actions, Plaintiffs suffered physical and/or emotional injuries, including but not limited to, pain and suffering, bodily injuries, emotional distress, anxiety, fear, intimidation, embarrassment, reputational damage, mortification, loss of liberty interest, monetary losses, and other injuries and damages.

## COUNT II
## VIOLATION OF 42 U.S.C § 1983
## FREEDOM OF SPEECH, ASSOCIATION AND ASSEMBLY
## UNDER THE FIRST AND FOURTEENTH AMENDMENTS
## TO THE U.S. CONSTITUTION
### (AS TO ALL DEFENDANTS)

386.    All prior paragraphs are incorporated by reference as if stated in full herein.

387.    Defendant officers, acting under color of state law and in concert with one another, deprived Plaintiffs of their constitutional rights to free speech, association and assembly under the First and Fourteenth Amendments to the U.S. Constitution by targeting, planning, and executing the mass arrests at Club What's Next, subjecting Plaintiffs to unjustified invasions of privacy and governmental police interference based on the type of music and dance featured at the event.

388.    Gathering to listen to electronic music, to dance, to watch the performances of deejays and to assemble and associate with individuals who share the same musical interests is a form of artistic expression protected by the First Amendment to the U.S. Constitution.  *See, e.g.*, *Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989).

389.    Defendant officers targeted the gathering at Club What's Next for a so-called "raid," because it was an electronic music event.

390.    Plaintiffs had a right to perform electronic music and to peaceably associate and assemble with others who share a mutual enjoyment of electronic music.

391.    That actions of the Defendant officers have created, and will continue to create, a chilling effect on individual freedom of artistic expression which, left unchecked, will restrict Plaintiffs and others from participating in expressive association through electronic music in the future.

392.    At all times relevant to this action, Plaintiffs' First Amendment rights were clearly established, and Defendant officers acted objectively unreasonable under the circumstances.

393.    Defendant Gary Hagler, in his official capacity as Chief of Police of the City of Flint, had final control over day-to-day police matters, including the decision to authorize the actions of the Defendant officers alleged herein.  Hagler's policies, practices and customs amounted to a deliberate indifference of Plaintiffs' First Amendment rights and were a moving force behind their constitutional injuries.

394.    Defendant Robert Pickell, in his official capacity as Sheriff of Genesee County, had final control over day-to-day police matters, including the decision to authorize the actions of the Defendant officers alleged herein.  Pickell's policies, practices and customs amounted to a deliberate indifference of Plaintiffs' First Amendment rights and were a moving force behind their constitutional injuries.

395.    Defendant City of Flint violated Plaintiffs' rights under the First Amendment through its policies, practices and customs, including targeting individuals based on their musical preferences, which amounted to deliberate indifference of the Plaintiffs' rights under the First and Fourteenth Amendments, and were a moving force behind the constitutional deprivations caused by Defendant officers' actions.

396.    Defendant Genesee County violated Plaintiffs' rights under the First Amendment through its policies, practices and customs, including targeting individuals based on their musical preferences, which amounted to deliberate indifference of the Plaintiffs' rights under the First and Fourteenth Amendments, and were a moving force behind the constitutional deprivations caused by the Defendant officers' actions.

397.    As a direct and proximate result of Defendants' policies, practices, customs, and actions, Plaintiffs suffered the injuries and damages described in paragraph 385.

**COUNT III**
**FALSE ARREST AND FALSE IMPRISONMENT**
(AS TO INDIVIDUAL DEFENDANTS ONLY)

398.    All prior paragraphs are incorporated by reference as if stated in full herein.

399.    Defendant officers participated in a warrantless, illegal and unjustified arrest of Plaintiffs.

400.    Defendant officers unlawfully restrained the Plaintiffs' liberty and freedom of movement.

401.    Defendant officers intended to confine Plaintiffs when they placed Plaintiffs in handcuff restraints to restrict their mobility, ordered them under arrest, commanded them not to move, and kept them in police control and custody for extended periods of time.

402.    Defendant officers restrained Plaintiffs without probable cause.

403.    Defendant officers' actions resulted in the confinement of the Plaintiffs.

404.    Defendant officers' actions were intentional, unjustified, and objectively unreasonable under the circumstances.

405.    As a direct and proximate result of the Defendant officers' actions, Plaintiffs suffered the injuries and damages described in paragraph 385.

**COUNT IV**
**VIOLATION OF MCL §764.25a**
**UNLAWFUL STRIP SEARCH**
(AS TO INDIVIDUAL DEFENDANTS ONLY)

406.    All prior paragraphs are incorporated by reference as if stated in full herein.

407.    Strip searches are presumptively unlawful under Michigan law, which provides in relevant part:

> A person arrested or detained for a misdemeanor offense shall not be strip-searched unless (1) . . . there is reasonable cause to believe that the person is concealing a weapon, a controlled substance, or evidence of a crime; and (2) the strip search is conducted by a person who has obtained prior written authorization from the chief law enforcement officer of the law enforcement agency conducting the strip search, or from that officer's designee. M.C.L. §764.25a(2)(a) and (b).

408.    Michigan law defines a "strip search" as "a search which requires a person to remove his or her clothing to expose underclothing, breasts, buttocks, or genitalia." M.C.L. §764.25a(1).

409.    Michigan law requires that if a person is strip-searched in accordance with the requirements of M.C.L. §764.25a, the strip search must be conducted (1) by a person of the same sex, and (2) performed in a place that prevents the search from being observed by a person not conducting or necessary to assist with the search. M.C.L. §764.25a(3).

410.    Michigan law requires that an arresting officer prepare a report of any strip search performed on an individual, and the report must include the name and gender of the person searched, the person performing the search, and the person assisting in the search; the time, date, and place of the strip search; the justification for the strip search; and a list of all items recovered from the strip search. M.C.L. §764.25a(4).

411.    Defendant officers violated M.C.L. §764.25a by:

A)    Strip searching Plaintiffs without reasonable cause to believe any of them, individually, were concealing a weapon, controlled substance, or evidence of crime;

B)    Strip searching Plaintiffs with no particularized probable cause and in the absence of a lawful arrest;

C)    Strip searching Plaintiffs without specific prior written authorization from the chief law enforcement officer of their respective agencies;

D)    Conducting the strip searches in places that exposed Plaintiffs to observation by persons not conducting or assisting with the search; and

E)    Failing to prepare a report of each strip search in accordance with M.C.L. §764.25a(4).

412.    There are no statutory exceptions which authorized the strip searches of the Plaintiffs.

413.    Defendant officers are not entitled to governmental immunity for their tortious conduct because:

a.    Defendant officers' conduct amounted to gross negligence in that it was so reckless as to demonstrate a substantial lack of concern for whether an injury would result; and

b.    Defendant officers' conduct was intentional.

414.    Defendant officers' intentional and/or grossly negligent conduct was the proximate cause of injury and damage to Plaintiffs.

415.    As a direct and proximate result of Defendant's actions, Plaintiffs suffered the injuries and damages described in paragraph 385.

**COUNT V**
**VIOLATION OF MCL §764.25b**
**UNLAWFUL BODY CAVITY SEARCH**
(AS TO INDIVIDUAL DEFENDANTS ONLY)

416.    All prior paragraphs are incorporated by reference as if stated in full herein.

417.    Body cavity searches are unlawful under Michigan law when performed without a valid search warrant on an individual who is neither incarcerated nor confined to a facility by court order.  M.C.L. §764.25b(2).

418.    Michigan law defines a "body cavity search" as "a physical intrusion into a body cavity for the purpose of discovering any object concealed in a body cavity." M.C.L. §764.25b(1)(b).

419.    Michigan law requires a body cavity search performed with a valid search warrant must be conducted by a licensed physician or a physician's assistant, licensed practical nurse, or registered professional nurse acting with the approval of a licensed physician. M.C.L. §764.25b(5). If a body cavity search is conducted under a valid search warrant, the law enforcement officer who executes the warrant must prepare a report detailing certain facts about the search as set forth in M.C.L. §764.25b(6).

420.    Defendant officers violated M.C.L. §764.25b by performing body cavity searches on certain Plaintiffs, including Jennifer Thompson, Christopher Secord and Brennan LaFleur and Danielle Ramiller, without a valid search warrant.

421.    Defendant officers further violated M.C.L. §764.25b by performing body cavity searches where, upon information and belief, none of these officers are licensed health care providers as required in M.C.L. §764.25b(5).

422.    There are no statutory exceptions which authorized the body cavity search of Plaintiffs.

423.    Defendant officers are not entitled to governmental immunity for their tortious conduct because:

a.    Defendant officers' conduct amounted to gross negligence in that it was so reckless as to demonstrate a substantial lack of concern for whether an injury would result; and

b.    Defendant officers' conduct was intentional.

424. Defendant officers' intentional and/or grossly negligent conduct was the proximate cause of injury and damage to Plaintiffs.

425. As a direct and proximate result of Defendant officers' unlawful actions, Plaintiffs suffered the injuries and damages described in paragraph 385.

## COUNT VI
## ASSAULT AND BATTERY
(As to Individual Defendants Only)

426. All prior paragraphs are incorporated by reference as if stated in full herein.

427. Defendant officers' actions constituted unlawful touchings of the Plaintiffs.

428. Defendant officers caused Plaintiffs to be in imminent fear of bodily injury.

429. Defendant officers' actions were intentional, unjustified, and objectively unreasonable under the circumstances.

430. Defendant officers' conduct was the proximate cause of injury and damage to Plaintiffs.

431. As a result of Defendant officers' tortious acts, Plaintiffs suffered the damages and injuries described in paragraph 385.

## COUNT VII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(As to Individual Defendants Only)

432. All prior paragraphs are incorporated by reference as if stated in full herein.

433. Defendant officers' extreme and outrageous conduct intentionally caused Plaintiffs severe emotional distress.

434. Defendant officers abused their authority as law enforcement officers by using their governmental power to harass, berate, intimidate, and threaten Plaintiffs for the sole purpose of causing Plaintiffs severe humiliation and fear.

435.     The fact that Plaintiffs were subjected to Defendant officers' intentional conduct while restrained and rendered helpless intensified the severity of their emotional distress.

436.     Defendant officers' actions were intentional, unjustified, and objectively unreasonable under the circumstances.

437.     Defendant officers' conduct was the proximate cause of injury and damage to Plaintiffs.

438.     As a direct and proximate result of Defendant officers' tortious conduct, Plaintiffs suffered the injuries and damages described in paragraph 385.

<u>**RELIEF REQUESTED**</u>

Plaintiffs respectfully requests that this Court enter judgment against Defendants and award Plaintiffs the following relief:

A.     Monetary, compensatory,  and punitive damages in an amount to which Plaintiffs are found to be entitled;

B.     A declaratory judgment that Defendants' conduct was unconstitutional under the Fourth and Fourteenth Amendments to the U.S. Constitution;

C.     A declaratory judgment that Defendants' conduct was unconstitutional under the First and Fourteenth Amendments  to the U.S. Constitution;

D.     Enjoining Defendants from engaging in similar conduct in the future, and requiring appropriate training and supervision be put in place to avoid gross constitutional invasions of this magnitude in the future;

E.     Costs and attorneys fees pursuant to 42 U.S.C. §1988;

F.     All other legal, equitable, and injunctive relief that this Court deems just and appropriate.

*Respectfully submitted,*

PITT MCGEHEE PALMER RIVERS & GOLDEN, P.C.


/s/ Maureen M. Crane

Michael L. Pitt (P24428)
Peggy Goldberg Pitt (P31407)
Maureen M. Crane (P58904)
mcrane@pdmmp.com
Cooperating Attorneys, ACLU Fund of Michigan
117 West Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800


/s/ Michael J. Steinberg

Michael J. Steinberg (P43085)
msteinberg@aclumich.org
Kary L. Moss (P43759)
American Civil Liberties Union  Fund of Michigan
Attorneys for Plaintiffs
60 West Hancock Street
Detroit, MI  48221
(313) 578-6814


/s/ Kenneth M. Mogill

Kenneth M. Mogill (P17865)
kmogil@bignet.net
Mogill, Posner & Cohen
Cooperating Attorneys, ACLU Fund of Michigan
27 E. Flint Street, Fl. 2
Lake Orion, MI 48362
(248) 814-9470


/s/ Elizabeth L. Jacobs

Elizabeth L. Jacobs (P24245)
elzjacobs@aol.com
Cooperating Attorney, ACLU Fund of Michigan
615 Griswold Street, Suite 1125
Detroit, MI 48226
(313) 962-4090


/s/Gregory T. Gibbs

Gregory T. Gibbs (P26440)
greggibbs51@sbcglobal.net
Jeanmarie Miller (P44446)
Law Office of Gregory T. Gibbs
Cooperating Attorneys, ACLU Fund of Michigan
717 S. Grand Traverse Street
Flint, MI 48502
(810) 239-9470


DATED:  July 8, 2008

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Jennifer Thompson, Corey Anderson, Olatokunbo Bajulaiye, Michael Bird, Matthew Boedecker, Nathan Boisclair, Jessica Bremer, Alan Buckel, Crystal Camp, Joshua Camp, Nicholas Carmisito, Shawn Carson, Christiana Childers, Guy Courts, Anne Crivea, Daniel Desprez, Krista Dutcher, Ron Easton, Jr., Tyler Elgin, Victoria Hamilton, Douglas Holmes, Henry Johnson, Corliss Kalchert, Brian Kenny, Jessica King, Brennan LaFleur, Scott LaFleur, Jennifer Leal, J.T. Gordon Littleton, Jeffrey Manns, Scott Marshall, Mark Nuzzolilo, Jesse, Nyboer, Kylie Nyboer), Brandon Okamoto, Bradley O'Neil, Andrew Popp, Danielle Ramiller, Daniel Rawdon, Dominic Rocco, Danielle Sanders, Jason Sanders, Frank Schumacher, Paul Schweizer, Christopher Secord, Gary Sereno, II, Christopher Smith, Patricia Smith, Shawn Swinehart, Robin Thomas, John Turner, Garrett Whipple, Dustin Winn and Rachel Zitta, individually, and on behalf of all other similarly situated individuals,


                    Plaintiffs,

vs.


City of Flint, a municipal Michigan corporation; Gary Hagler, Flint Chief of Police, in his individual and official capacities; Genesee County; Robert J. Pickell, Genesee County Sheriff, in his individual and official capacities; Flint Police Officers Michael Beaver, Richard Besson, Colin Birnie, Mark Blough, Renee Burnett, Alpheno Donastorg, Al Fowlkes, Bobby Fowlkes, Joseph Hall, Mira Handley, Cynthia Herfert, Leteia Hughley, Joseph Lechota, Vennette Lott, Marcus Mahan, Patrick Majestic, William Meyer, Candace Miles, Arnold Patrick, Harold Payer, Philip Smith, Wayne Suttles, Sondra Taylor, Dominic Teft, Michael Vance, Rogelio Villarreal, Scott Watson and Terrell Weston, in their individual and official capacities; Genesee County Deputies Jeff Antcliff, Dean Curtis, Sandy Dunlap, David Dwyre, David MacDonald, Gerald Parks, Tom Pyles, Kevin Shanlian, Russ Sorenson, Chris Swanson, Mike Tocarchick, Jerry Willhelm and Mike Wolosuk, in their individual and official capacities; jointly and severally,

                    Defendants.

Case No.:4:07-cv-11107

HON. PAUL V. GADOLA
Mag. Judge Steven R. Whalen

**RELIANCE ON JURY DEMAND**

---

Pitt, McGehee, Mirer, Palmer & Rivers, P.C.
Michael L. Pitt (P24428)
Peggy Goldberg Pitt (P31407)
Maureen M. Crane (P58904)
Cooperating Attorneys, ACLU Fund of Michigan
117 West Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800

Kenneth M. Mogill (P17865)
Mogill, Posner & Cohen
Cooperating Attorneys, ACLU Fund of Michigan
27 E. Flint Street, Fl. 2
Lake Orion, MI 48362
(248) 814-9470

Gregory T. Gibbs (P26440)
Jeanmarie Miller (P44446)
Law Office of Gregory T. Gibbs
Cooperating Attorneys, ACLU Fund of Michigan
717 S. Grand Traverse Street
Flint, MI 48502
(810) 239-9470

Elizabeth L. Jacobs (P24245)
Cooperating Attorney, ACLU Fund of Michigan
615 Griswold Street, Suite 1125
Detroit, MI 48226
(313) 962-4090

Michael J. Steinberg (P43085)
Kary L. Moss (P43759)
American Civil Liberties Union Fund of Michigan
Attorneys for Plaintiffs
60 West Hancock Street
Detroit, MI  48221
(313) 578-6814

H. William Reising (P19343)
Plunkett & Cooney, P.C.
Attorneys for Defendants: Genesee County and
Genesee County Deputies
111 E. Court Street, Suite 1B
Flint, MI 48502
(810) 342-7001

Daniel Klemptner (P68691)
Assistant City Attorney
Trachelle C. Young (P63330)
Chief Legal Officer
Attorneys for City of Flint and Gary Hagler
1101 S. Saginaw Street, 3rd Floor
Flint, MI 48502
(810) 766-7146

Michael W. Edmunds (P55748)
William J. Brickley (P36716)
Garan Lucow Miller, P.C.
Attorneys for Defendant Flint police officers
8332 Office Park Drive
Grand Blanc, MI 48439
(810) 695-3700

G. Gus Morris (P32960)
Kupelian Ormond & Magy, P.C.
Attorney for Defendant Officer Michael Wolosuk
25800 Northwestern Highway, Suite 950
Southfield, MI 48075
(248) 357-0000

## RELIANCE ON JURY DEMAND

Plaintiffs herein rely on the Jury Demand previously filed and paid in this action.

*Respectfully submitted,*

PITT MCGEHEE PALMER RIVERS & GOLDEN

/s/ Maureen M. Crane
Michael L. Pitt (P24428)
Peggy Goldberg Pitt (P31407)
Maureen M. Crane (P58904)
mcrane@pittlawpc.com
Cooperating Attorneys, ACLU Fund of Michigan
117 West Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800

/s/ Michael J. Steinberg
Michael J. Steinberg (P43085)
msteinberg@aclumich.org
Kary L. Moss (P43759)
American Civil Liberties Union Fund of Michigan
Attorneys for Plaintiffs
60 West Hancock Street
Detroit, MI 48221
(313) 578-6814

/s/ Kenneth M. Mogill
Kenneth M. Mogill (P17865)
kmogil@bignet.net
Mogill, Posner & Cohen
Cooperating Attorneys, ACLU Fund of Michigan
27 E. Flint Street, Fl. 2
Lake Orion, MI 48362
(248) 814-9470

/s/ Elizabeth L. Jacobs
Elizabeth L. Jacobs (P24245)
elzjacobs@aol.com
Cooperating Attorney, ACLU Fund of Michigan
615 Griswold Street, Suite 1125
Detroit, MI 48226
(313) 962-4090

/s/ Gregory T. Gibbs
Gregory T. Gibbs (P26440)
greggibbs51@sbcglobal.net
Jeanmarie Miller (P44446)
Law Office of Gregory T. Gibbs
Cooperating Attorneys, ACLU Fund of Michigan
717 S. Grand Traverse Street
Flint, MI 48502
(810) 239-9470

DATED:  July 8, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was served upon all parties to the above cause to each of the attorneys/parties of record herein via the Court's ECF System to their respective e-mail addresses disclosed on the Notice of Electronic Filing on **July 8, 2008**.


 /s/ Maureen M. Crane
Pitt, McGehee, Palmer, Rivers & Golden, P.C.
By: Maureen M. Crane (P 58904)
mcrane@pittlawpc.com
Attorney for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800